IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   COLOPLAST CORP.
         PELVIC REPAIR SYSTEM
         PRODUCTS LIABILITY LITIGATION                    MDL No. 2387

THIS DOCUMENT RELATES TO:

*Katherine Thomas, et al., v. Coloplast Corp.*          Civil Action No. 2:15-cv-12815

## ORDER

Pending before the court is Coloplast Corp.'s ("Coloplast") Motion to Compel and in the Alternative to Dismiss [ECF No. 8]. Briefly, the plaintiffs in this case failed to serve a Plaintiff Fact Sheet ("PFS"), and Coloplast seeks an order compelling production of a PFS within five days, dismissing the case with prejudice if the plaintiffs fail to comply; dismissing the case with prejudice without an opportunity to comply; or an award of $100 per day from the date of the PFS deadline until plaintiffs serve a PFS. The plaintiffs have responded [ECF No. 9], and this matter is now ripe for my review.

## I.   Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as

dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, each containing thousands of individual cases, case management becomes of utmost importance. See *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." Id. at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

## II.   Discussion

Pursuant to PTO # 107, the Coloplast Wave 2 plaintiffs, including the Thomases, were ordered to complete and serve a PFS on Coloplast by September 19, 2016. *Id.* at 2. Although all other deadlines for Coloplast Wave 2 ultimately were stayed pursuant to PTO # 110, the September 19 PFS due date remained in place. [ECF No. 6].

According to Coloplast, the plaintiffs failed to submit a PFS within the court-ordered deadline. Prior to the PFS deadline, plaintiffs' counsel had moved to withdraw as counsel [ECF No. 7], which I denied on December 1, 2016. [ECF No. 11]. In response to the instant motion, plaintiffs' counsel responded that they were unable to communicate with the plaintiffs and still wished to withdraw as counsel.

3

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that although recourse under Rule 37 is justified, the plaintiffs should be afforded one more chance to comply with discovery before further sanctions are imposed.

The first factor, bad faith, is difficult to ascertain, given that plaintiffs' counsel has not had recent contact with the plaintiffs. However, counsel's inability to contact the plaintiffs is not an excuse, and instead indicates a failing on the part of the Thomases. Plaintiffs have an obligation to provide counsel with any information needed to prosecute their case, including up-to-date contact information. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 2, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." (PTO # 2 ¶ E, *In re: Coloplast Corp., Pelvic Repair System Prods. Liab. Litig.*, No. 2:12-md-002387, entered Sept. 21, 2012, *available at* http://www.wvsd.uscourts.gov/MDL/2387/orders.html). This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. Pretrial Order # 12, which was jointly drafted by the leadership counsel of both parties, expressly states any plaintiff who fails to comply with PFS obligations, may for good cause shown, be subject to sanctions. PTO # 12 ¶ 2(d)[1]. The plaintiffs nevertheless failed to comply. Although these failures do not appear to be callous, the fact that

---

[1] Pretrial Order # 105 subsequently amended PTO # 12; however the language in section 2(d) was not affected. *See* PTO # 105 [ECF No. 572].

they were blatant—and in full knowledge of the court's orders and discovery deadlines—leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also supports an order for sanctions. Without a PFS, Coloplast is "unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine*, 460 F.3d at 1234. Furthermore, because Coloplast has had to divert its attention away from timely plaintiffs and onto the plaintiffs, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2387.

The adverse effect on the management of the MDL as a whole segues to the third factor: the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. A number of plaintiffs have failed to supply Coloplast with a timely PFS. In fact, of the motions filed by Coloplast to date, the majority of these plaintiffs, including the Thomases, have failed to supply a PFS at all. Consequently, the court expects to have to evaluate and dispose of a significant number of motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This

5

cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiffs. However, the final factor, the effectiveness of lesser sanctions must be considered. Rather than imposing harsh monetary sanctions or dismissal at this time, the court opts for a lesser sanction and allows the plaintiffs one more chance to comply with PTO # 107 subject to dismissal with prejudice, upon motion by the defendant, if they fail to do so. This course of action is consistent with PTO # 12, which warned plaintiffs of the sanctions. *See* PTO # 12 ¶ 1.

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i–iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing approximately 500 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances of each case, nor would it be fair for the court to place this responsibility on Coloplast. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording the plaintiffs a final chance to comply with discovery, subject to dismissal with prejudice if they fail to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the

parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## III.   Conclusion

It is **ORDERED** that Coloplast's Motion to Compel and in the Alternative to Dismiss [ECF No. 8] is **GRANTED in part** to the extent Coloplast seeks an order compelling production of the PFS and **DENIED in part** and without prejudice as to the remaining relief. It is further **ORDERED** that the plaintiffs must serve a completed PFS on Coloplast on or before **April 10, 2017**. **If the plaintiffs do not comply, I may grant any motion to dismiss with prejudice filed by Coloplast.**

I **FIND**, pursuant to Rule 37(b)(2)(C), that the plaintiffs' failure to serve a PFS not substantially justified and no other circumstances make an award of expenses unjust. Accordingly, it is **ORDERED** that Coloplast shall have through and including **March 17, 2017** to file an affidavit of reasonable fees and expenses incurred in filing this Motion, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs. The plaintiffs shall have through and including **March 24, 2017** to respond to Coloplast's submissions. The response shall include any justification that would preclude or reduce an award of expenses, or, in the alternative, shall include a statement identifying the attorney and/or party whose conduct necessitated Coloplast's Motion. Failure to file a response shall be deemed an admission of or agreement with the

representations and arguments of Coloplast. Coloplast shall have through and including **March 29, 2017** to file a reply memorandum. At the conclusion of the period allowed for briefing, the court will rule on any request for reasonable fees and costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 10, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

8